Huestes **LEON**, Plaintiff,

v.

David **HARRIS**, Superintendent, Green Haven Correctional Facility, Defendant.

**No. 79 Civ. 6209 (LFM).**

United States District Court, S. D. New York.

May 13, 1980.

Huestes Leon, pro se, plaintiff.

Robert Abrams, Atty. Gen., State of New York, by Cobby J. Shereff, New York City, for defendant.

## OPINION

MacMAHON, Chief Judge.

Defendant moves to dismiss the complaint for failure to state a claim for relief pursuant to Rule 12(b)(6), Fed.R.Civ.P. Since factual matters outside the pleadings have been presented and considered, we treat the motion as one for summary judgment pursuant to Rule 56(b), Fed.R.Civ.P.

Plaintiff brings this action pro se under 42 U.S.C. § 1983 against the superintendent of Green Haven Correctional Facility. Plaintiff alleges that the conditions of his temporary confinement at Green Haven from September 8 to September 10, 1979, while he was being transferred from another state facility to the Auburn Correctional Facility, constituted cruel and unusual punishment in violation of his Eighth Amendment rights and a deprivation of the free exercise of religion in violation of his First Amendment rights. He seeks compensatory and punitive damages as well as declaratory and injunctive relief.

Defendant, citing some seventeen cases, first contends that the allegations are vague and conclusory.[1] But the allegations are quite specific. Plaintiff alleges that he was confined to his cell twenty-four hours daily, prohibited from participating in normal prison recreation activities, and refused access to the gymnasium, weight room, reading room, dining area, auditorium, and chapel; that he was forced to eat and care for all bodily needs in his cell, which had an open toilet; that he was not provided with towels or a change of clothes and was not allowed to shower; that the cell was cold and that he was not provided with blankets or a pillow but only two sheets; that he was forced to stand in the cold for 15 minutes during a strip search prior to his departure for Auburn; and that all of this was pursuant to institutional policies, practices and regulations. In short, we do not see how the complaint could be any more specific, and will thank counsel in the future to spend more time on analysis of the actual case and less on the compilation of a compendium of useless generalizations.

Defendant next contends that the conditions and restrictions complained of do not constitute constitutional indignity or violate plaintiff's freedom of religion.

Although the question is close, we do not think that plaintiff's Eighth Amendment claim should be dismissed without further factual development. The Eighth Amendment condemns conditions of punishment that are "barbarous" or "shocking" to the collective conscience of modern society.[2] The constitutionality of a particular confinement depends upon its duration and circumstances considered in light of the legitimate penal objectives sought to be served.[3]

Here, on the one hand, the alleged duration and circumstances of plaintiff's confinement are not as severe as those that have been condemned by our Court of Appeals in other cases.[4] On the other hand,

---

**1.** *See, e. g., Patton v. Dumpson*, 425 F.Supp. 621, 626 (S.D.N.Y.1977).

**2.** *See Trop v. Dulles*, 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 596 (1958); *LaReau v. MacDougall*, 473 F.2d 974, 978 (2d Cir. 1972), *cert. denied*, 414 U.S. 878, 94 S.Ct. 49, 38 L.Ed.2d 123 (1973).

**3.** *Cunningham v. Ward*, 546 F.2d 481, 483 (2d Cir. 1976).

**4.** *LaReau v. MacDougall, supra*, 473 F.2d at 977–79 (plaintiff confined 5 days in totally dark and silent cell without sink or water fountain and with "Chinese" toilet consisting of grate-covered hole in floor, flushed from outside; given no opportunity to read, exercise, or talk to outsiders); *Wright v. McMann*, 387 F.2d 519, 521 (2d Cir. 1967) (plaintiff confined naked for 11 days in subfreezing temperatures in barren, filthy cell; forced to sleep on concrete floor;

they appear to be more severe than those upheld by that court.[5] Moreover, in all the cases cited above harsh conditions were justified at least to some extent by the legitimate institutional goals of disciplining inmates who had violated prison rules and protecting other inmates from expected violence. Here, by contrast, defendant concedes that plaintiff was merely being transferred, not disciplined. An issue of fact remains as to whether segregation of plaintiff was necessary to avoid disruption of normal daily routine at Green Haven, and defendant has thus far proffered no justification at all for the alleged denial of blankets, towels, and bathing facilities.

■ The allegations place this case between the polar examples considered by the Court of Appeals. Further factual discovery is necessary to determine precisely where on the spectrum the case falls. For example, the alleged 2½ day duration of plaintiff's confinement at Green Haven, though relatively short, does not automatically oust his claim. The Court of Appeals has suggested that, depending upon the conditions of the confinement and the mental state of the plaintiff, even one day might violate the Eighth Amendment.[6] Other courts have held similarly short periods unconstitutional.[7] Plaintiff alleges that the cell was cold, but a fact issue remains as to whether the temperature in September 1979 was as uncomfortable as the subfreezing February temperatures found significant in *Wright v. McMann*.[8] Plaintiff alleges that the toilet was "open," but it remains to be seen whether the "open" toilet created the same unbearable conditions as the "Chinese" toilet condemned in *LaReau v. MacDougall*.[9]

The supporting affidavit asserts that under institutional policy, transient inmates are issued blankets and toiletries and allowed to shower where feasible. The affidavit does not assert, however, that plaintiff received the benefit of this policy. Such an assertion, contradicted by the complaint and opposing affidavits, would at most create a genuine issue of material fact requiring trial. Thus plaintiff's Eighth Amendment claim must stand.

■ We reach the same result on his First Amendment claim that pursuant to institutional policy he was denied access to the chapel. We start by observing that courts in this Circuit have been "especially solicitous" of the religious rights of prisoners.[10] Restrictions on religious freedom are permissible only if they serve an important

denied use of soap, towel, toilet paper, tooth brush, comb, etc.; sink and toilet encrusted with dirt, slime, feces).

5. *Sostre v. McGinnis*, 442 F.2d 178, 190–94 (2d Cir. 1971) (en banc) (though in segregated confinement for a year, plaintiff had rudimentary implements of personal hygiene, opportunities for exercise, therapy and constant communication with others, and access to general reading materials and unlimited numbers of law books), *cert. denied*, 404 U.S. 1049, 92 S.Ct. 719, 30 L.Ed.2d 740, 405 U.S. 978, 92 S.Ct. 1190, 31 L.Ed.2d 254 (1972).

6. *Sostre v. McGinnis, supra*, 442 F.2d at 193 n. 23.

7. *See McCray v. Burrell*, 516 F.2d 357, 366–67, 369 (4th Cir. 1975) (en banc) (plaintiff confined for 46 hours in barren cell with "Oriental" toilet and no implements of personal hygiene), *cert. denied*, 423 U.S. 923, 96 S.Ct. 2640, 48 L.Ed.2d 788 (1976); *Knuckles v. Prasse*, 302 F.Supp. 1036, 1061–62 (E.D.Pa.1969) (plaintiff confined naked for 2½ days in two-man unlit cell with single bed and 2 blankets, malfunctioning overflowing toilet, and no implements of personal hygiene), *aff'd*, 435 F.2d 1255 (3d Cir. 1970) (per curiam), *cert. denied*, 403 U.S. 936, 91 S.Ct. 2262, 29 L.Ed.2d 717 (1971).

8. *Supra*.

9. "What is most offensive to this Court was the use of the 'Chinese toilet'. Causing a man to live, eat and perhaps sleep in close confines with his own human waste is too debasing and degrading to be permitted." *LaReau v. Mac-Dougall, supra*, 473 F.2d at 978.

10. *Williams v. Warden*, 470 F.Supp. 1123, 1125 (D.Conn.1979). *See, e. g., Burgin v. Henderson*, 536 F.2d 501 (2d Cir. 1976); *Mukmuk v. Commissioner of Dep't of Correctional Servs.*, 529 F.2d 272 (2d Cir.), *cert. denied*, 426 U.S. 911, 96 S.Ct. 2238, 48 L.Ed.2d 838 (1976).

objective and are reasonably adapted to achieving it.[11]

In *LaReau v. MacDougall*,[12] the Court of Appeals held that an unruly Catholic prisoner could be excluded from Sunday mass because he was shown to be an instigator of trouble. The Court added, however, that not all prisoners in segregated confinement could be denied such access because not all are potential troublemakers; instead, prison authorities were obliged to make some discriminations among segregated inmates.[13] In *Mawhinney v. Henderson*,[14] the Court of Appeals held that plaintiff stated a claim for damages upon allegations that on two occasions, pursuant to prison policy, prison officials denied him access to chapel services simply because he was in punitive segregation without making individual determinations as to the necessity of the exclusion.[15] Plaintiff makes essentially the same claim here, and defendant does not assert that any individual determination was made as to him. Moreover, since plaintiff was not in "punitive" but merely "transient" segregation, the likelihood of justification for the exclusion is lower than in *LaReau* and *Mawhinney*.

■ Defendant contends that the claim for damages should be dismissed for failure to allege personal involvement and bad faith. But plaintiff's First and Eighth Amendment claims both allege that his mistreatment came pursuant to official policies, practices and regulations. These allegations, if true, would support an inference that defendant, as superintendent of the prison, had actual knowledge of at least the practices that gave rise to the deprivations.

As to the First Amendment claim, almost identical allegations against a prison superintendent were held sufficient to state a claim in *Mawhinney*. We note in addition that under New York law, prison rules and regulations are required to accommodate the rights of inmates to worship freely.[16] Defendant may of course assert the defense that the alleged policy of excluding all transient prisoners from chapel was adopted in good faith, with a reasonable belief in its constitutionality.[17] But this assertion would merely raise a genuine issue of material fact precluding summary judgment.[18] In light of the fact that *Mawhinney*, forbidding wholesale exclusion of classes of prisoners from chapel, was decided three years prior to plaintiff's alleged exclusion, we will be interested to see defendant prove his defense.

As to the Eighth Amendment claim, defendant is charged by New York statute with ultimate responsibility for cell conditions and treatment of inmates,[19] a fact held significant though not dispositive in *Wright v. McMann*.[20] We think that the claim for damages alleges sufficient personal involvement to escape dismissal at this time.

■ We reach a different result, however, with respect to the claim for declaratory and injunctive relief. Though the point was not addressed, it is plain from plaintiff's papers that he is no longer incarcerated at Green Haven but is now at the Auburn Correctional Facility. Therefore his claim for declaratory and injunctive relief should be dismissed as moot.[21]

11. *Mawhinney v. Henderson*, 542 F.2d 1, 3 (2d Cir. 1976); *LaReau v. MacDougall, supra*, 473 F.2d at 979.

12. *Supra.*

13. *LaReau v. MacDougall, supra*, 473 F.2d at 979–80 & n. 9.

14. *Supra.*

15. *Mawhinney v. Henderson, supra*, 542 F.2d at 3.

16. N.Y. Correction Law § 610 (McKinney Supp. 1979–1980).

17. *See, e. g., Mukmuk v. Commissioner of Dep't of Correctional Servs., supra*, 529 F.2d at 275–76.

18. *Id.*

19. N.Y. Correction Law § 18 (McKinney Supp. 1979–1980).

20. 460 F.2d 126, 135 (2d Cir. 1972).

21. *Tawwab v. Metz*, 554 F.2d 22 (2d Cir. 1972).

A final word. Plaintiff's pro se opposing papers are quite correct in stating that "[t]he defendant cites a lot of cases, that has no revlancy [sic], and has [sic] no bearing on the matters contained in plaintiff's complaint." On plaintiff's Eighth Amendment claim challenging his conditions of confinement we found three Court of Appeals cases directly on point. On his claim alleging exclusion from chapel we found two such cases. Defendant's twelve-page brief cited none of them. Instead, it cited voluminous authorities for certain well-known general propositions that gave us no guidance in deciding this motion. The motion is thus subject to denial for failure to comply with the requirement of General Rule 9(b) that a movant file a memorandum setting for the points and authorities relied upon for relief.[22] Plaintiff, by contrast, commendably cited the leading Court of Appeals decision on conditions of confinement. We hope that defendant matches plaintiff's performance henceforth.

Accordingly, defendant's motion for dismissal of the complaint for failure to state a claim for relief pursuant to Rule 12(b)(6), Fed.R.Civ.P., treated as a motion for summary judgment pursuant to Rule 56(b), Fed.R.Civ.P., is denied. Plaintiff's claims for declaratory and injunctive relief are dismissed as moot.

So ordered.

---

**22.** General Rule 9(b), Rules of the United States District Courts for the Southern and Eastern Districts of New York.