Jerry YOUNG, a/k/a Ramadan, Plaintiff–Appellant,

v.

Thomas A. COUGHLIN, III, K. Weaver, Defendants–Appellees.

No. 333, Docket 88–2315.

United States Court of Appeals, Second Circuit.

Submitted Nov. 25, 1988.

Decided Jan. 24, 1989.

Jerry Young, Comstock, pro se.

Judith I. Ratner, Asst. Atty. Gen., Albany (Robert Abrams, Atty. Gen., of the State of New York, Albany, of counsel), for defendants-appellees.

Before TIMBERS, PIERCE, and PRATT, Circuit Judges.

PIERCE, Circuit Judge:

This is an appeal from an order of the United States District Court for the Northern District of New York, *Foley, J.*, dated June 24, 1988, which denied the plaintiff's motion for summary judgment, granted defendants' cross-motion for summary judgment and dismissed the plaintiff's § 1983 complaint. We affirm so much of the district court's opinion as dismissed plaintiff's due process claims. We also affirm the denial of plaintiff's motion for summary judgment in all respects. However, because we do not believe that defendants met their burden of proving they were entitled to summary judgment on plaintiff's first amendment claim, we reverse and remand for further proceedings.

## DISCUSSION

Appellant Jerry Young filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 in federal district court on July 10, 1986, alleging that prison officials at the Auburn Correctional Facility had placed him in a "limited privilege program" without a hearing, in violation of his due process rights. Appellant also alleged that prison officials had prevented him from attending religious services or classes while he was confined under this program, and while he was confined shortly thereafter to disciplinary keeplock. Appellant sought declaratory and injunctive relief, as well as substantial monetary damages, in his complaint.[1] The matter was referred by the district judge to Magistrate DiBianco.

Young moved for summary judgment, and the defendants cross-moved for summary judgment. On May 6, 1988, the magistrate filed a Report and Recommendation in which he recommended that defendants' motion be granted and plaintiff's complaint be dismissed. The plaintiff filed timely objections to the magistrate's report, and following review, the district judge filed a Memorandum Order and Decision in which he adopted the magistrate's report and recommendation. The district judge found the plaintiff's objections to be "speculative and conclusory in nature," and ordered that plaintiff's complaint be dismissed. Accordingly, judgment was entered for the defendants.

The facts before the district court were undisputed. According to Kenneth E. Weaver, Chairman of Auburn's Program Committee, on or about July 17, 1984, appellant was placed in Auburn's "limited privilege program" after he refused several job assignments within the prison. Under the limited privilege program, a prisoner is confined to his cell twenty-three hours each day, and is not allowed to attend movies or special shows, or use the library. Commissary privileges are also limited in the program. A prisoner can, however,

---

1. Since Young is no longer incarcerated at Auburn, but was transferred to Attica Correctional Facility, his claim for declaratory and injunctive relief is moot. *See Tawwab v. Metz*, 554 F.2d 22, 23–24 (2d Cir.1977).

obtain release from the program at any time, provided he is not in disciplinary confinement, by choosing to accept a proffered work assignment. In this case, appellant was offered a position while in the limited privilege program, but he refused to take it.

Appellant remained in the limited privilege program from approximately July 17, 1984 until October 12, 1984. It is undisputed that throughout this time, appellant was denied access to religious services. On October 12, 1984, appellant's status changed as a result of various acts of unrelated misbehavior. Consequently, from October 12, 1984, until December 17, 1984, when he was transferred to Attica, Young remained in continuous disciplinary keeplock, rather than the limited privilege program. While appellant was in disciplinary keeplock, prison officials continued to deny him access to religious services.

## A. *Appellant's Placement in the Limited Privilege Program*

■ As both the magistrate and district judge noted, appellant's § 1983 action is at least his second due process challenge to placement in Auburn's limited privilege program. *See Young v. Henderson*, 84–CV–1074 (N.D.N.Y. Oct. 24, 1984); *see also Young v. Coughlin, et al.*, 86–CV–583 (N.D.N.Y. July 20, 1987) (same plaintiff subsequently raised due process claim for yet a third time, and was sanctioned for doing so). Quite apart from the fact that appellant's claim is without merit, appellant is precluded from relitigating his present due process claim against the prison officials under principles of collateral estoppel. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979). Accordingly, the district court did not err in dismissing Young's due process claim.

## B. *The Denial of Access to Religious Services*

In his complaint, Young stated that he "is a Muslim and he was denied to attend and participate [sic] in the Muslim Ramadan Fast in the general population, etc."

In his motion for summary judgment, he also stated that he was unable to attend religious services or classes during the period when he was confined to either the limited privilege program or punitive keeplock. Young later amplified this allegation in an affidavit stating as follows:

The plaintiff is a Muslim and his religion is Islam and I am a believer of the Holy Qur'an (the Holy Book) for all Muslims. The plaintiff argues that the month of Ramadan is a religious observance month for Muslims all over the world. The plaintiff argues that during the month of Ramadan, it is mandatory that all Muslims should (1) attend Juma services (Friday Religious Services) (2) attend Muslim study call classes daily (3) attend Idul–Fitr (end of Ramadan Festival) (4) Idul–Ad'ha (heart of Sacrifice), etc. .

In a Memorandum of Law in support of their motion for summary judgment, appellees responded to these allegations by contending that appellant had "failed to state how his placement in the limited privilege program [had] affected his observance of Ramadan," and that appellant's "conclusory allegations fail[ed] to state a claim upon which relief [might] be granted." At no point, however, did appellees set forth any specific reasons in an affidavit or otherwise for their decision to restrict appellant's exercise of his first amendment rights.

In the report and recommendation which was adopted by the district court, the magistrate accepted appellees' characterization of appellant's complaint as conclusory, and observed that appellees' decision not to allow Young "to attend ... religious services with the general population ... was completely reasonable given plaintiff's disciplinary confinement." Judge Foley also rejected appellant's first amendment claim, stating:

As the Magistrate further notes, a prisoner's right to practice his religion is not absolute, and prison officials may impose reasonable restrictions when necessary. *Dreibelbis v. Marks*, 675 F.2d 579, 580 (3d Cir.1982) (citations omitted). Plaintiff, at the time was subject to discipli-

nary sanction as well as being on limited privilege status; clearly the restrictions placed upon him were reasonable in light of the circumstances.

In our view, it was error to grant appellees' cross-motion for summary judgment and to dismiss appellant's complaint at this stage of the proceedings.

As a threshold matter, we believe that Young's pleadings were sufficiently clear and specific to state a claim for which relief might be granted. The district court's ruling that appellant's allegations were "conclusory" simply is not supported by a review of Young's complaint and moving papers. Appellant clearly states that beginning on July 17, 1984, he was precluded from attending religious services, classes, and any of the activities associated with the celebration of Ramadan, because of his placement in the limited privilege program, and his subsequent placement in punitive keeplock. We do not believe that these allegations can be characterized as ambiguous or conclusory.

■■■ Next, the court's finding that the restrictions on appellant's first amendment rights were "reasonable" is not supported by the record. Although we recognize that great deference should be accorded to prison officials as they undertake the difficult responsibility of maintaining order in prisons, we have long held that prisoners should be afforded every reasonable opportunity to attend religious services, whenever possible. *See Mawhinney v. Henderson*, 542 F.2d 1 (2d Cir.1976); *see also Cruz v. Beto*, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). A prisoner's first amendment right to the free exercise of his religious beliefs may only be infringed to the extent that such infringement is " 'reasonably related to legitimate penological interests.' " *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 107 S.Ct. 2400, 2404, 96 L.Ed.2d 282 (1987) (citation omitted). At no time during the pendency of this action did the defendants proffer an explanation as to why Young was denied access to religious services, or articulate a particular penological interest that was served by denying appellant such access. In *Mawhin-*

*ney,* which involved an alleged deprivation of first amendment rights, we held that it was incumbent upon prison officials to make such a showing in order to prevail on a motion to dismiss. *Mawhinney,* 542 F.2d at 3 ("[A]n evidentiary hearing will establish what policies concerning religious practices exist at [the prison] and whether officials had a reasonable basis for limiting appellant's participation at group services."). Since appellees made no effort to justify their restriction of appellant's free exercise rights while he was in either the limited privilege program or disciplinary keeplock, they were not entitled to summary judgment as a matter of law, at least at this juncture. *See Leon v. Harris*, 489 F.Supp. 221, 224–25 (S.D.N.Y.1980) (denying defendants' motion for summary judgment on grounds that prison officials had failed to establish that this particular prisoner needed to be excluded from church services).

■■■ While it very well may be true that, on remand, appellees will be able to show that the restrictions at issue here are reasonably adapted to achieving a legitimate penological objective, the district court should not have dismissed appellant's first amendment claim without requiring prison officials to establish the basis for the first amendment restrictions imposed. It also was error to assume that prison officials were justified in limiting appellant's free exercise rights simply because Young was in disciplinary confinement. *See LaReau v. MacDougall,* 473 F.2d 974, 979 n. 9 (2d Cir.1972) ("[N]ot every prisoner in segregation lawfully can be prevented from attending church services in the chapel ... [because] [n]ot all segregated prisoners are potential troublemakers...."), *cert. denied,* 414 U.S. 878, 94 S.Ct. 49, 38 L.Ed.2d 123 (1973); *see also Harris,* 489 F.Supp. at 225 (prison officials must make individual determinations on a case-by-case basis as to the need for exclusion).

## CONCLUSION

The judgment of the district court is affirmed insofar as it dismissed appellant's due process claims; however, we reverse as to the dismissal of appellant's first

amendment claim, and remand for further proceedings consistent with this opinion.