993 F.2d 306
 Richard Akbar SALAHUDDIN, Plaintiff-Appellant,
v.
Thomas A. COUGHLIN, III; Robert Kuhlman; Ernest Edwards;
Deputy Superintendent Mitchell; Deputy
Superintendent McCrea and Lt. Lewis,
Defendants-Appellees.
 No. 922, Docket 92-2171.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 27, 1993.
Decided May 14, 1993.
 
 Howard M. Erichson, New York City (Thomas J. Moloney, Cleary, Gottlieb, Steen & Hamilton, of counsel), for plaintiff-appellant.
 Edward J. Curtis, Jr., Asst. Atty. Gen., New York City (Robert Abrams, Atty. Gen. of the State of New York, Yolanda M. Pizarro, Asst. Atty. Gen., of counsel), for defendants-appellees.
 Before: NEWMAN, MINER and McLAUGHLIN, Circuit Judges.
 MINER, Circuit Judge:
 Plaintiff-appellant Richard Akbar Salahuddin requested that Muslim congregate religious services be held at the Sullivan Correctional Facility ("Sullivan") during his confinement there in 1985. His requests were denied, and he commenced this action pro se to challenge the denials. The United States District Court for the Southern District of New York (Leval, J.) granted summary judgment for the defendants-appellees and dismissed Salahuddin's complaint, finding that the New York State Department of Correctional Services ("Department") acted reasonably in denying Salahuddin's request for congregate religious services. For the reasons that follow, the judgment of the district court is reversed in part and the case is remanded for further proceedings consistent with this opinion.
 BACKGROUND
 Salahuddin is Muslim. While in the custody of the Department prior to his transfer to Sullivan, he and other Muslim inmates participated in the weekly congregate religious observance known as Jumu'ah. Participation in Jumu'ah is the central observance of Islam. It is commanded by the Qur'an (the principal book of the Muslim religion), see Qur'an 62:9-10, must be held on Friday afternoon and must be performed congregationally rather than individually. Jumu'ah has been compared in importance "to the Saturday service of the Jewish faith and the Sunday service of the various Christian sects." See O'Lone v. Estate of Shabazz, 482 U.S. 342, 360, 107 S.Ct. 2400, 2410, 96 L.Ed.2d 282 (1987) (Brennan, J., dissenting).
 
 
 1
 Construction of Sullivan was not yet completed when the Department decided to open it to receive inmates in July of 1985. The decision was made as a consequence of overcrowding in the Department's other facilities. The Department designated certain employees at other facilities to select inmates for transfer to Sullivan from among those inmates who were in "keeplock," a form of disciplinary confinement. Salahuddin, who was at the Auburn Correctional Facility ("Auburn") and scheduled for release from keeplock on August 23, 1985, was selected for transfer. On August 7, 1985, the Department transferred Salahuddin to Sullivan.
 
 
 2
 While Salahuddin remained at Sullivan, neither he nor any other inmate was allowed to participate in weekly Jumu'ah services. His requests to establish these services were met with statements that no congregate religious services were permitted at Sullivan. Nor were Salahuddin and the other Muslims at Sullivan allowed to hold a congregate religious service to celebrate Eid-ul-Adha on August 26, 1985. According to the tenets of Islam, Eid-ul-Adha is an important Muslim festival. During the period Salahuddin was confined at Sullivan, defendant-appellee Thomas A. Coughlin, III was Commissioner of the Department, defendant-appellee Robert Kuhlman was Superintendent of Sullivan and defendant-appellee Ernest Edwards was Deputy Superintendent for Security at Sullivan.
 
 
 3
 After Salahuddin's arrival at Sullivan, a counselor determined that he should not have been transferred to Sullivan because his scheduled date of release from keeplock was so imminent. The Department therefore transferred Salahuddin out of Sullivan on August 30, 1985. On March 16, 1988, Salahuddin was released on parole.
 
 
 4
 Salahuddin filed a complaint pro se, initially asserting various claims pursuant to 42 U.S.C. §§ 1981, 1983, 1985(3), 1986, 1987 and 1988.[1] With respect to the section 1983 claims, he alleged that he had been deprived of recreation time and religious liberty and that the defendants had interfered with his correspondence. He requested injunctive, declaratory and monetary relief.[2] Salahuddin's complaint was served on Coughlin on April 18, 1989, on Edwards on April 20, 1989, on Kuhlman on May 5, 1989, and on McCrea and Mitchell on May 11, 1989.
 
 
 5
 Defendants Coughlin, Kuhlman and Edwards moved on June 13, 1989 for dismissal or summary judgment pursuant to Federal Rules of Civil Procedure 12(b)(5), 12(b)(6) and 56. In response to defendants' motion, Salahuddin requested a continuance and appointment of counsel in order to complete discovery.
 
 
 6
 The district court granted Salahuddin an extension of time but denied his application for appointment of counsel. Salahuddin served defendants with a document production request, interrogatories and deposition notices but had received no response to these requests by the time he was required to respond to defendants' summary judgment motion.
 
 
 7
 The district court, in a judgment entered February 25, 1992, granted defendants' motion and dismissed Salahuddin's suit. The district court rejected Salahuddin's claim that a denial of two days recreation time rose to the level of a constitutional violation. The district court also held that Salahuddin's claim that his constitutional rights were violated when he was required to use his legal name on outgoing correspondence was barred by the doctrine of res judicata. Salahuddin has abandoned the denial of recreation time claim and only mentioned the interference with correspondence claim in a footnote to his brief.[3]
 
 
 8
 Finally, the district court briefly considered the free exercise claim. The court, after setting out the standard for a prisoner's free exercise claim, made a finding that the Department had acted reasonably and, on that finding alone, rejected Salahuddin's claim:
 
 
 9
 The Department acted reasonably in transferring keeplocked inmates to Sullivan before construction was complete to avoid overcrowding at other facilities, despite the temporary unavailability at Sullivan of programs and congregate religious services. Salahuddin's constitutional claim on this ground is denied.
 
 
 10
 Salahuddin appeals from the judgment of the district court.
 
 DISCUSSION
 
 11
 To survive a motion for summary judgment, a nonmovant need only show that there is a genuine issue of material fact. Fed.R.Civ.P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986). All facts must be viewed in the light most favorable to the nonmoving party, and the nonmoving party must be given the benefit of all reasonable inferences. Sulewski v. Federal Express Corp., 933 F.2d 180, 182 (2d Cir.1991). We review the district court's grant of summary judgment de novo. Id. Where, as here, a party moves for summary judgment on the ground that the nonmoving party bears the burden of proof and will be unable to prove an essential element of his case, Rule 56 allows summary judgment only "after adequate time for discovery." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).
 
 
 12
 It is well established that prisoners have a constitutional right to participate in congregate religious services. Young v. Coughlin, 866 F.2d 567, 570 (2d Cir.), cert. denied, 492 U.S. 909, 109 S.Ct. 3224, 106 L.Ed.2d 573 (1989). Confinement in keeplock does not deprive prisoners of this right. Id. A prisoner's right to practice his religion is, however, not absolute. See Benjamin v. Coughlin, 905 F.2d 571, 574 (2d Cir.), cert. denied, 498 U.S. 951, 111 S.Ct. 372, 112 L.Ed.2d 335 (1990).
 
 
 13
 In O'Lone v. Estate of Shabazz, the Supreme Court held that prison regulations alleged to infringe prisoners' free exercise rights are to be judged by a "reasonableness" standard less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights. 482 U.S. at 349, 107 S.Ct. at 2404-05. In evaluating the constitutionality of a restriction, four factors are considered:
 
 
 14
 1) whether there is a rational relationship between the regulation and the legitimate government interests asserted; 2) whether the inmates have alternative means to exercise the right; 3) the impact that accommodation of the right will have on the prison system; and 4) whether ready alternatives exist which accommodate the right and satisfy the governmental interest.
 
 
 15
 Benjamin, 905 F.2d at 574.
 
 
 16
 In his complaint, Salahuddin stated that he "was denied the right to attend Al-Jumu'ah congregational religious services after making a timely request to attend same on or about August 12 and 14, 1985 ... [as well as] [o]n or about August 19, 1985." Salahuddin also alleged that "Khulman had refused to allow the [M]uslims and Salahuddin to hold [a] congregation [sic] religious celebration for the Eid-ul-Adha."
 
 
 17
 In support of their summary judgment motion, defendants submitted an affidavit of defendant Edwards, who stated in a conclusory manner that "[p]laintiff was unable to attend services simply because the state of construction at Sullivan prevented us from providing services consistent with the security requirements of maximum security inmates." In his opposition papers, Salahuddin alleged that, although defendants transferred him, they "knew ... or should have known that their actions were violative of [his] constitutional rights...."
 
 
 18
 Salahuddin contends that the district court, in dismissing his claim, resolved the question of reasonableness before he had obtained information by way of discovery to refute the defendants' allegations. He avers that, even without discovery, he put into issue defendants' contention that their imposition on his religious freedom was necessary and unavoidable and, accordingly, that the following issues remain unresolved: whether Sullivan reasonably could have provided the space and personnel to accommodate a weekly religious service; and whether the Department reasonably could have avoided this conflict by choosing to transfer only those inmates who did not participate regularly in congregate worship.
 
 
 19
 The district court, in its consideration of Salahuddin's free exercise claim, made the following factual finding: "The Department acted reasonably in transferring keeplocked inmates to Sullivan before construction was complete to avoid overcrowding at other facilities, despite the temporary unavailability at Sullivan of programs and congregate religious services." In reaching this decision, the district court did not consider whether it was reasonable for the Department to prohibit congregate religious services at Sullivan. Rather, the court assumed the "unavailability" of congregate religious services even though this was the central dispute in the litigation. The evidence presented by defendants suggests that Sullivan had a prison recreation yard in which congregate religious services could be held and that the personnel who supervised the exercise periods also could supervise those services.
 
 
 20
 Salahuddin contends that congregate services could have been accommodated at Sullivan at de minimis cost to prison administration and security. Defendants contend, to the contrary, that congregate services could not have been accommodated at Sullivan, but they present nothing more than a conclusory assertion to that effect. Even if the district court believed that defendant Edwards was in a better position to determine the reasonableness of the Department's decision and whether other alternatives existed, it was not entitled to credit the affidavit of Edwards against Salahuddin in the absence of discovery. See Anderson, 477 U.S. at 249, 106 S.Ct. at 2510-11. Indeed, discovery could help determine whether use of a suitable room or the recreation yard could accommodate Salahuddin's right to congregate religious services and satisfy the government's security interests. See Benjamin, 905 F.2d at 574.
 
 
 21
 Even assuming a reasonable basis for the denial of Salahuddin's requests, the district court failed to consider whether it was reasonable for the Department to transfer inmates who regularly participated in congregate religious services, rather than only those inmates whose constitutional rights would not be compromised by the transfer. Again, the district court apparently assumed that if it was reasonable to transfer any keeplocked inmate, then it was reasonable to transfer Salahuddin. This assumption conflicts with the evidence in the record. The Department engaged in a selection process to determine which of the keeplocked inmates should be transferred to Sullivan, and it knew that it would refuse to allow congregate religious services at Sullivan. It cannot be disputed that some keeplocked inmates who were confined in other facilities participated regularly in congregate religious services, while others did not, and that prison officials knew or reasonably could have determined which inmates were the regular religious participants.
 
 
 22
 Further discovery could disclose and identify those who participated regularly in congregate religious services and those who did not, as well as the availability of inmates in keeplock whose free exercise rights would not have been infringed by a transfer to Sullivan. In the absence of adequate discovery, the reasonableness of transferring to Sullivan those prisoners who required congregate religious services such as Salahuddin remains very much an open question.
 
 CONCLUSION
 
 23
 Because the district court erred in granting summary judgment to defendants on the basis of such an undeveloped record, the judgment is reversed, and the case is remanded for further proceedings consistent with this opinion. We express no opinion on the qualified immunity defense raised by the appellees in their brief on appeal, since that defense has not yet been asserted in the district court.
 
 
 
 [1]
 Salahuddin voluntarily withdrew his section 1981 and section 1986 claims. The district court dismissed his section 1987 and section 1985(3) claims, and Salahuddin has not pursued these claims on appeal
 
 
 [2]
 Because he has been released, Salahuddin's request for injunctive and declaratory relief is moot. See Tawwab v. Metz, 554 F.2d 22, 23-24 (2d Cir.1977)
 
 
 [3]
 For the reasons set forth in the district court's opinion, we affirm the dismissal of these claims