OPINION AND ORDER
 

 SCHEINDLIN, District Judge.
 

 Pro se plaintiff Richard Graham, along with two other inmates, Jose Figueroa and William Kanelos, bring suit under 42 U.S.C. §§ 1983 and 1997 both individually and on behalf of all others similarly situated against officials and employees of the New York State Department of Correctional Services (“DOCS”) at Fishkill Correctional Facility (“FishkiH”) (“defendants”). The Complaint alleges that conditions for protective custody status inmates in the O, P and Q galleries of the Special Housing Unit (“SHU”) at Fishkill violate plaintiffs’ constitutional rights. The Complaint seeks both monetary damages and injunctive relief.
 

 Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, defendants now move to dismiss the Complaint for failure to state a claim upon which relief can be granted. For the reasons stated below, defendants’ motion to dismiss is granted, with leave to replead in part.
 

 I. BACKGROUND
 

 The facts set forth below are drawn from the Complaint and are presumed true for purposes of this motion.
 

 In September 1999, Richard Graham, Jose Figueroa and William Kanelos were protective custody status inmates in the Fishkill SHU.
 
 [1]
 
 Graham arrived at Fishkill on September 3, 1999, and was placed in Unit Q of the SHU under protective custody status on September 7, 1999. Com
 
 *320
 
 plaint (“Compl.”) ¶ 16F(a)-(b).
 
 [2]
 
 Graham also met with medical personnel on September 7, 1999.
 
 See id.
 
 ¶ 16F(c). He was transferred to another facility for a court appearance on September 9, 1999, and subsequently returned to Unit Q on September 16, 1999.
 
 See id.
 
 ¶ 16F(h). After returning to Fishkill, Graham “made known that he didn’t feel well” and that he was concerned he had not received his prescribed medications for several health conditions.
 
 Id.
 
 ¶ 16F(j)-(k). Graham saw a physician on September 21, 1999, and received his medications at that time.
 
 See id.
 
 ¶ 16F(i). Graham alleges that he was deprived of his medications for a total of thirteen days.
 
 See id.
 
 ¶ 16F(k).
 

 On or about September 9, 1999, Graham met with Lt. Symanowicz to discuss the conditions of confinement for protective custody status inmates in the SHU.
 
 See
 
 Exhibit F to Complaint. On September 17, 1999, Graham sent a memo to Lt. Symanowicz that confirmed this conversation and detailed more than twenty-five complaints regarding the conditions in the SHU.
 
 See id.
 
 Graham and Lt. Symanow-icz met again on September 24, 1999.
 
 See id.
 
 On September 26, 1999, Graham sent a second memo to Lt. Symanowicz regarding this second meeting that contained more than ten additional complaints regarding confinement conditions.
 
 [3]
 

 See id.
 
 On that same day, plaintiffs Figueroa, Graham and Kanelos signed the Complaint in this case. The plaintiffs actually filed suit on December 9,1999.
 

 In their Complaint, plaintiffs allege that protective custody inmates housed in the O, P and Q galleries at Fishkill are subjected to a number of unconstitutional conditions of confinement. These conditions include failing to allow those inmates to be out of their cells for the required amount of time, depriving them of job opportunities, denying access to religious services, denying prison wages, failing to provide adequate medical care, limiting the location and content of their meals, and denying access to the courts. The complete list of allegations consumes twenty handwritten pages.
 

 II. LEGAL STANDARD
 

 Dismissal of a complaint for failure to state a claim pursuant to Rule 12(b)(6) is proper only where “it appears beyond doubt that the plaintiffs] can prove no set of facts in support of [their] claim which would entitle [them] to relief.”
 
 Harris v. City of New York,
 
 186 F.3d 243, 247 (2d Cir.1999). “The task of the court in ruling on a Rule 12(b)(6) motion is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.”
 
 Cooper v. Parsky,
 
 140 F.3d 433, 440 (2d Cir.1998) (internal quotation marks and citation omitted). To properly rule on such a motion, the court must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the nonmovant’s favor.
 
 See Harris,
 
 186 F.3d at 247. Nevertheless, “[a] complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6).”
 
 De Jesus v. Sears, Roebuck & Co.,
 
 87 F.3d 65, 70 (2d Cir.1996) (internal quotation marks and citations omitted).
 

 However, pro se complaints are held to “less stringent standards than formal pleadings drafted by lawyers,” and are to be construed liberally on a motion to dismiss.
 
 Haines v. Kerner,
 
 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Thus, a pro se complaint “should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiffs] can prove no set of facts in support of [their] claim[s] which would entitle
 
 *321
 
 [them] to relief.”
 
 Hughes v. Rowe,
 
 449 U.S. 5, 10, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980).
 

 III. DISCUSSION
 

 A. Class Certification
 

 Plaintiffs Graham, Figueroa and Kane-los seek to bring this suit as a class action on behalf of all protective custody status inmates in the Fishkill SHU.
 

 In order to represent a class, a plaintiff must satisfy the requirements of Rule 23(a)(4) of the Federal Rules of Civil Procedure by being able to “fairly and adequately protect the interests of the class.” However, “[i]t is well settled in this circuit that pro se plaintiffs cannot act as class representatives. They do not satisfy the requirements of Rule 23(a)(4).”
 
 McLeod v. Crosson,
 
 No. 89 Civ.1952, 1989 WL 28416, at *1 (S.D.N.Y. Mar. 21, 1989).
 
 See also Phillips v. Tobin,
 
 548 F.2d 408, 412-15 (2d Cir.1976).
 

 Because plaintiffs are not represented by counsel,
 
 [4]
 
 they may not act as representatives of a class and must therefore pursue their claims against defendants individually.
 
 [5]
 

 B. Dismissal Pursuant to 42 U.S.C. § 1997e(a)
 

 Defendants assert that Graham’s claims should be dismissed for failure to exhaust administrative remedies.
 
 See
 
 Defendants’ Memorandum of Law in Support of their Motion to Dismiss the Complaint (“Def.Mem.”) at 7-10. Graham contends that he exhausted administrative remedies by twice writing to Lt. Symanowicz detailing his complaints. Copies of that correspondence were also sent to defendants Selsky, Goord, Perez and Mazzuca.
 
 See
 
 Compl. ¶ 12. Defendants argue that letters are insufficient to constitute exhaustion and that plaintiffs must follow more formal grievance procedures.
 
 See
 
 Def. Mem. at 7.
 

 A prisoner must exhaust all available remedies before bringing an action regarding prison conditions.
 
 See Wright v. Dee,
 
 54 F.Supp.2d 199, 204 (S.D.N.Y.1999). The Prison Litigation Reform Act (“PLRA”) provides that:
 

 no action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted.
 

 42 U.S.C. § 1997e(a).
 
 [6]
 

 New York State has established procedures for filing grievances in each of its correctional facilities. These procedures require that the inmate submit complaints to the grievance clerk of the Inmate Grievance Resolution Committee (“IGRC”) within fourteen calendar days of an alleged occurrence.
 
 [7]
 

 See
 
 N.Y. Correct. Law
 
 *322
 
 § 139 (McKinney Supp.1998); 7 New York Codes, Rules and Regulations (“NY.C.R.R.”) § 701 et seq.
 
 See also Grey v. Sparhawk,
 
 No. 99 Civ. 9871, 2000 WL 815916, at *2 (S.D.N.Y. June 23, 2000) (“As an initial matter, when filing an administrative complaint, a prisoner must file the complaint with the grievance committee established at his correctional facility”).
 

 It does not appear that Graham has sufficiently complied with the appropriate procedures, as he apparently did not file the official grievance complaint form with the IGRC.
 
 [8]
 
 Nevertheless, even if Graham did sufficiently follow the grievance procedures, he did not exhaust the administrative remedies as required by the PLRA. Defendants argue that Graham never intended to give the procedures any chance to function, given that his last letter to prison officials was dated the same day he signed the Complaint.
 
 See
 
 Def. Mem. at 8. The simultaneous signing of the letter and the Complaint did not allow prison officials adequate time to investigate and hear the grievances raised in the memos. Allowing Graham to proceed on his claim without exhausting administrative remedies would run counter to Congress’ purpose in enacting the PLRA.
 
 See Nussle v. Willette,
 
 224 F.3d 95, 103 (2d Cir.2000) (The PLRA “is concerned with filtering out frivolous suits administratively, before they get to court.”).
 

 Accordingly, the appropriate course is to dismiss this action without prejudice, permitting Graham to seek an exception to the fourteen-day time limit.
 
 See Beeson v. Fishkill Correctional Facility,
 
 28 F.Supp.2d 884, 894 (S.D.N.Y.1998) (“Statutory exhaustion requirements are mandatory, and courts are not free to dispense with them.”). In seeking to file an untimely grievance, plaintiff must offer an explanation for his failure to file a timely grievance. Under the Inmate Grievance Program, the IGP Supervisor may grant exceptions to the fourteen-day time limit based on “mitigating circumstances.” 7 N.Y.C.R.R. § 701.7(a)(1). If the time bar is waived, and the grievance processed, plaintiff will have exhausted his administrative remedies. He will then be able to re-file this lawsuit and proceed on the merits of his claim, assuming that his grievance is not adequately redressed at the prison administrative level.
 

 If, however, the IGP supervisor finds no such mitigating circumstances, and declines to resolve plaintiffs grievance, plaintiff may file a new action detailing and explaining;
 

 (1) his failure to file a timely grievance;
 

 (2) his efforts to file a late grievance; and
 

 (3) the alleged mitigating circumstances.
 

 Santiago v. Meinsen,
 
 89 F.Supp.2d 435, 441 (S.D.N.Y.2000).
 

 Because the exhaustion requirement of the PLRA is not jurisdictional, it may be waived in appropriate circumstances.
 
 See Boos v. Runyon,
 
 201 F.3d 178, 183-84 (2d Cir.2000). A court will therefore be required to decide whether plaintiff has exhausted his administrative remedies by seeking to file an untimely grievance or whether the exhaustion requirement should be waived based on mitigating circumstances such as plaintiffs transfer to a different facility.
 
 [9]
 

 C. Conditions Claims
 

 Even if Graham’s claims are deemed exhausted, several of his claims would not withstand a motion to dismiss.
 
 *323
 
 Under 42 U.S.C. § 1997e(c)(2), a court may dismiss complaints made by prisoners without first requiring exhaustion of administrative remedies if the complaint fails to state a claim upon which relief can be granted. The following claims are dismissed, with prejudice, for failure to state a claim.
 

 Plaintiff claims that several conditions within the Fishkill SHU constitute cruel and unusual punishment and thus violate his Eighth Amendment rights.
 
 [10]
 

 See
 
 Compl. ¶¶ 3, 16. To demonstrate that the conditions of confinement constitute cruel and unusual punishment in violation of the Eighth Amendment, a plaintiff must satisfy both an objective and subjective element.
 
 See Jolly v. Coughlin,
 
 76 F.3d 468, 480 (2d Cir.1996). These elements include proof that (1) the conditions of confinement resulted in “unquestioned and serious deprivations of basic human needs,”
 
 Anderson v. Coughlin,
 
 757 F.2d 33, 35 (2d Cir.1985);
 
 see also Jolly,
 
 76 F.3d at 480, and (2) that the defendants acted with “deliberate indifference.”
 
 Wilson v. Seiter,
 
 501 U.S. 294, 303-04, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).
 

 Plaintiff’s “conditions claims” do not constitute serious deprivations of basic human needs. Routine discomfort and restrictive or even harsh prison conditions “are part of the penalty that criminal offenders pay for their offenses against society.”
 
 Rhodes v. Chapman,
 
 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981);
 
 see also Hudson v. McMillian,
 
 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). These “conditions claims” are therefore dismissed with prejudice for failure to state a claim upon which relief can be granted.
 
 [11]
 

 D. Remaining Claims
 

 1. Constitutional Right of Access to the Courts
 

 Plaintiff alleges he was denied his constitutional right of access to the courts because he was restricted in his use of legal materials and access to law library personnel while confined in the Fishkill SHU.
 
 See
 
 Compl. ¶ 16R. Plaintiff contends that he was only permitted to receive photocopies rather than original legal materials, that he was denied access to law library typewriters and participation in legal training and services, and that he was permitted to meet with law library personnel only during his one hour recreation period.
 
 See id.
 
 Defendants have moved to dismiss this claim, arguing that Graham has failed to allege that any non-frivolous legal claim has been frustrated or impeded because of this alleged denial of access.
 
 See
 
 Def. Mem. at 15-16.
 

 All persons, including prisoners, have a constitutional right of access to the courts.
 
 See Monsky v. Moraghan,
 
 127 F.3d 243, 246 (2d Cir.1997). To establish a violation of this right, “a plaintiff must demonstrate that a defendant caused ‘actual injury,’ i.e., took or was responsible for actions that ‘hindered [a plaintiffs] efforts to pursue a legal claim.’ ”
 
 Id.
 
 at 247 (quot
 
 *324
 
 ing
 
 Lewis v. Casey,
 
 518 U.S. 343, 349, 351, 116 S.Ct. 2174, 135 L.Ed,2d 606 (1996)). A prisoner cannot establish actual injury “simply by establishing that his prison’s law library or legal assistance program is subpar in some theoretical sense.”
 
 Lewis,
 
 518 U.S. at 351, 116 S.Ct. 2174. Rather, a prisoner must “demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim,”
 
 Id.
 

 Here, plaintiff had access to legal materials and legal personnel, although perhaps not in the manner and to the extent he would have liked. In addition, plaintiff has failed to allege that any particular defendant prevented his access to legal materials, or that any of his legal claims were prejudiced due to his limited access to legal materials. Therefore the motion to dismiss this claim is granted without prejudice and with leave to re-plead. If plaintiff wishes to submit an amended complaint upon exhaustion of administrative remedies, he must set forth specific facts to support this claim. In the amended pleading, Graham should detail the actions taken by each defendant in denying him access to legal materials, the case to which such denials were related, the effect of these denials on that case, and the ultimate result in the case.
 
 [12]
 

 2. First Amendment Claim
 

 Plaintiff claims that protective custody status inmates in the Fishkill SHU are denied their First Amendment right to freedom of religion. _
 
 See
 
 Compl. ¶¶ 16D, 16S. Plaintiff alleges that inmates are deprived of religious services and confidential meetings with clergy and counselors, even though there are facilities in the SHU to accommodate such meetings.
 
 See id.
 
 Defendants move to dismiss asserting that the Complaint contains no factual allegations to support these claims.
 
 See
 
 Def. Mem. at 16-17.
 

 It is well established in the Second Circuit that prisoners have a constitutional right to participate in religious services.
 
 See Salahuddin v. Coughlin,
 
 993 F.2d 306, 308 (2d Cir.1993);
 
 Young v. Coughlin,
 
 866 F.2d 567, 570 (2d Cir.1989). “Confinement in keep-lock does not deprive prisoners of this right.”
 
 Salahuddin,
 
 993 F.2d at 308. However, the constitutional right of inmates to the free exercise of their religion is restricted due to their confinement.
 
 See Salahuddin v. Mead,
 
 No. 95 Civ. 8581, 2000 WL 335552, at *3 (S.D.N.Y. Mar. 30, 2000). This right “may only be infringed to the extent that such infringement is ‘reasonably related to legitimate penological interests.’”
 
 Young,
 
 866 F.2d at 570 (quoting
 
 O’Lone v. Estate of Shabazz,
 
 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987)).
 

 Defendants have not expressed any penological interests in denying protective custody status inmates access to private religious counseling. Nonetheless, plaintiff has not plead sufficient facts to support a claim for a violation of his right to the free exercise of religion under the First Amendment. Plaintiff does not allege that he requested clergy visits, when he made those requests, how those requests were made, by whom they were denied, and the reason(s) for such denials. Therefore, the motion to dismiss this claim is granted without prejudice and with leave to replead. If plaintiff wishes to submit an amended complaint upon exhaustion of administrative remedies, he must set forth specific facts that provide a basis for this claim.
 

 3. Eighth Amendment Claim of Medical Indifference
 

 Graham also claims that he was denied medication for thirteen days while
 
 *325
 
 in the Fishkill SHU, and that this failure to provide adequate medical care violated his Eighth Amendment rights.
 
 See
 
 Compl. ¶ 16F. A prisoner’s conditions of confinement fall within the ambit of the Eighth Amendment, which prohibits the infliction of “cruel and unusual punishments” on those convicted of crimes. U.S. Const. amend. VIII;
 
 See also Rhodes,
 
 452 U.S. at 345-46, 101 S.Ct. 2392. To establish a claim for violation of the Eighth Amendment due to inadequate medical care, “a prisoner must prove ‘deliberate indifference to [his] serious medical needs.’ ”
 
 Chance v. Armstrong,
 
 143 F.3d 698, 702 (2d Cir.1998) (quoting
 
 Estelle v. Gamble,
 
 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)).
 

 The deliberate indifference standard involves both objective and subjective components.
 
 First,
 
 the deprivation of medical care must be sufficiently serious in objective terms. Relevant factors in determining whether a serious medical condition existed include “the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual’s daily activities; or the existence of -chronic and substantial pain.”
 
 Chance,
 
 143 F.3d at 702 (internal quotation marks and citations omitted).
 
 Second,
 
 the defendant “must act with a sufficiently culpable state of mind” by knowing of and disregarding an excessive risk to inmate health or safety.
 
 Id.
 
 “[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.”
 
 Id.
 

 Here, plaintiff’s allegations regarding the denial of medication are not sufficient to state a claim. These allegations do not allege which of the defendants denied him the medication, nor do they adequately state that the prison officials were deliberately indifferent to his condition. The plaintiff may, however, be able to plead facts that would support this claim, and therefore the motion to dismiss this claim is granted without prejudice and with leave to replead. Once plaintiff has demonstrated that he has exhausted his administrative remedies as indicated above, he may file an amended complaint that pleads sufficient facts to support a claim for denial of adequate medical care. If Graham files an amended complaint, he should specify which defendants denied him his medications, the extent to which the defendants were aware of his medical conditions, and the resulting impact on his physical well being.
 

 E. Damages
 

 Finally, defendants claim that plaintiffs’ request for injunctive relief is moot because none of the original three plaintiffs is currently housed in the Fish-kill SHU. “It is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility... .On the other hand, the transfer does not moot an action for damages.”
 
 Prins v. Coughlin,
 
 76 F.3d 504, 506 (2d Cir.1996). Because the plaintiffs are no longer incarcerated at Fishkill, their claims for injunctive relief are moot.
 
 [13]
 

 IV. CONCLUSION
 

 For the reasons stated above, the defendants’ motion to dismiss Graham’s claims pursuant to 42 U.S.C. § 1997e for failure to exhaust administrative remedies is granted with leave to replead those claims that were dismissed without prejudice. Defendants’ motion to dismiss Graham’s claims for a violation of his right to court access, his Eighth Amendment claim for denial of adequate medical care, and his First Amendment claim for a violation of his right to freedom of religion are granted without prejudice and with leave to re-
 
 *326
 
 plead. Defendants’ motion to dismiss Graham’s remaining Eighth Amendment prison “conditions claims” is granted with prejudice.
 

 Any amended complaint in this action must be served and filed within thirty days after all prison administrative remedies are exhausted.
 
 [14]
 

 [1]
 

 . None of the plaintiffs is currently housed in the Fishkill SHU. Graham is currently incarcerated at the Otisville Correctional Facility; Figueroa is presently housed at the Wood-bourne Correctional Facility; and Kanelos was released on parole on March 2, 2000. The record is unclear as to when the plaintiffs were removed from Fishkill, although they were in the Fishkill SHU through at least September 26, 1999 (the date they signed the Complaint).
 

 [2]
 

 . The Complaint contains no allegations regarding when plaintiffs Figueroa and Kanelos were first housed in the Fishkill SHU.
 

 [3]
 

 . Graham sent copies of both of these memos to named defendants Commissioner Goord, Donald Selsky (Acting Superintendent at the time), William Mazzuca, and Deputy Superintendent of Programs Ada Perez.
 

 [4]
 

 . On June 23, 2000, this Court granted Graham's motion for appointment of counsel. As of the date of this ruling, however, no counsel has been appointed to represent plaintiffs in this case. Pursuant to a Memo-Endorsement on a letter addressed to this Court from defendants' counsel dated July 28, 2000, denying plaintiff's application that the motion not be decided until the appointment of counsel, this Court decided the instant motion based on plaintiffs’ pro se status.
 

 [5]
 

 . Plaintiffs Kanelos and Figueroa did not respond to the defendants’ Motion to Dismiss the Complaint, and have therefore waived their right to make a written response to the Motion. Because plaintiffs Kanelos and Figueroa have not alleged facts specific to their individual claims, their claims are dismissed without prejudice and with leave to replead as individual claims. The remainder of this Opinion applies only to plaintiff Graham.
 

 [6]
 

 . Graham’s claims regarding conditions in the Fishkill SHU, including his claim concerning defendants' deliberate indifference to his medical needs, are actions "with respect to prison conditions” governed by the PLRA.
 
 See, e.g., Cruz v. Jordan,
 
 80 F.Supp.2d 109, 116 (S.D.N.Y.1999).
 

 [7]
 

 . For an in-depth discussion of New York’s administrative grievance procedures,
 
 see generally Cruz v. Jordan,
 
 80 F.Supp.2d at 117-18.
 

 [8]
 

 . Graham does not mention or explain the grievance procedures in his Complaint; he merely alleges that his memos to Lt. Syma-nowicz satisfied the exhaustion requirement.
 

 [9]
 

 . Graham alleges in his memos to Lt. Syma-nowicz, attached to the Complaint as Exhibit F, that protective custody status inmates in the SHU were denied the opportunity to speak with IGRC representatives. If the plaintiff repleads, this may constitute a mitigating circumstance.
 

 [10]
 

 . These conditions include: limiting protective custody class inmates to only two and a half hours out of their cells per day, depriving them of job opportunities, denying prison wages, limiting the location and content of their meals, denying them hot water and electrical outlets in their cells, providing inadequate lighting, limiting their recreational opportunities, denying stamp buying opportunities, limiting access to newspapers, limiting personal phone calls, requiring them to wear prison-issued clothing, and limiting personal grooming opportunities. These claims are hereinafter referred to as the “conditions claims.’’
 

 [11]
 

 . Plaintiff alleges in his Complaint that many of these conditions are in violation of various state DOCS directives.
 
 See
 
 Compl. ¶ 16. To the extent that the plaintiff is alleging a cause of action under Section 1983 based on these state violations, the claims are dismissed for failure to state a claim upon which relief can be granted. "[A] state employee's failure to conform to state law does not itself violate the Constitution and is not alone actionable under § 1983.”
 
 Patterson v. Coughlin,
 
 761 F.2d 886, 891 (2d Cir.1985).
 

 [12]
 

 . Examples of actual injuries due to inadequate prison libraries or legal assistance include: a complaint dismissed for failure to satisfy a technical requirement that the prisoner was unaware of because the prison’s legal assistance facilities were deficient; and the inability to file a complaint due to the inadequacies of the law library.
 
 See Lewis,
 
 518 U.S. at 351, 116 S.Ct. 2174.
 

 [13]
 

 . Plaintiffs' request for money damages, however, is not moot and will be considered if and when plaintiffs replead.
 

 [14]
 

 . Graham is directed to apprise this Court of his efforts to file an untimely grievance as well as any response on the part of the IGRC.