**Generoso ARROYO LOPEZ, Plaintiff,**

v.

**Correction Officer Christopher NUTTALL, Defendant.**

**No. 94 CIV. 6708(DC).**

United States District Court,
S.D. New York.

Nov. 4, 1998.

Washington Square Legal Services, Inc. by Claudia Angelos, Jeffrey J. Chapman, Law Student, Keri N. Matthews, Law Student, Anne Pearson, Law Student, New York, NY, for Plaintiff.

Dennis C. Vacco, Attorney General of the State of New York by Christopher A. Quaranta, Michael O. Hueston, Assistant Attorney Generals, New York, NY, for Defendant.

## MEMORANDUM DECISION

CHIN, District Judge.

In this case brought pursuant to 42 U.S.C. § 1983, plaintiff Generoso Arroyo Lopez ("Arroyo") alleges that his First Amendment rights to freedom of religion were violated when he was incarcerated at Downstate Correctional Facility ("Downstate"). Arroyo contends that while he was engaged in a Muslim prayer, defendant Christopher Nuttall ("Nuttall"), a corrections officer, approached him from behind and shoved him without justification, disrupting his prayer.

The case was tried to the Court on April 29 and 30, 1998. For the reasons that follow, judgment will be entered in favor of plaintiff. Pursuant to Fed.R.Civ.P. 52, the following constitute my findings of fact and conclusions of law.

### FINDINGS OF FACT

Arroyo, a practicing Muslim, was incarcerated at Downstate in June and July 1994. For part of that time he was housed in Dorm 2. Arroyo is 5 feet 7 inches tall and weighed, in 1994, approximately 145 pounds.

As a Muslim, Arroyo was required to pray five times each day. The last of the five prayers was the night prayer, called Isha; it was to be performed during the period from approximately two hours past sunset to approximately midnight. Isha consisted of four units of prayer, each called a rakat. The first two rakat had to be said outloud, but that requirement could be met by whispering the rakat softly in such a manner that others could not hear. The last two rakat were to be said silently. In addition, before the prayer could be said, wu'du, a ceremonial washing away of impurities with water, had to be performed first. Wu'du was performed by washing the hands, wrists, and mouth and by quickly passing a wet hand over the head and feet.

In July 1994, Nuttall was 5 feet 11 inches tall and weighed more than 300 pounds. He worked as the "housing officer" on the "midnight" or "graveyard" shift in Dorm 2, from 11 p.m. to 7 a.m. "Quiet time" began on Dorm 2 at approximately 11 p.m. and lasted until approximately 6:30 a.m. During quiet time inmates were not permitted to talk or make any noise or do anything that would disturb other inmates. Inmates were permitted during quiet time to pray to themselves as long as they did so quietly and without disturbing others.

On July 3, 1994, when quiet time began, Arroyo went to the sink to perform wu'du.

After finishing wu'du, he went back to his cubicle. He placed a towel on the floor, took his sneakers off, and started performing Isha. He was whispering the first two rakat softly and could not be heard by others. His eyes were closed when he heard a loud bang. He tried to ignore the noise. Suddenly, however, he was shoved from behind, losing his balance in the process.

Arroyo turned and saw Nuttall standing behind him looking at him. Nuttall told Arroyo that he was not supposed to be praying at that time. Arroyo was unable to finish his prayer and he therefore was unable to perform his Isha that night.[1]

The next day, July 4, 1994, Arroyo wrote a letter to Superintendent Stephen Dalsheim complaining about the incident. (PX 3). The following day he filed a grievance against Nuttall based on the incident. (PX 4).

In the few months prior to July 3, 1994, and continuing for at least a few days thereafter, Nuttall was involved in a "run[ning] battle with Muslim inmates" over their efforts to pray during quiet time. (PX 7, 8, 9). He thought that in some cases some of the Muslim inmates were troublemakers and it was his understanding—incorrectly—that Muslim inmates could not pray during quiet time, with the exception of the morning prayer.

On July 3, 1994, Nuttall shoved Arroyo and disrupted Arroyo's praying, even though Arroyo could not be heard and was not disturbing other inmates, because Nuttall incorrectly believed that Arroyo could not pray—even quietly—during quiet time. Nuttall was under the mistaken impression that Arroyo should have performed the evening prayer earlier, before Nuttall came on duty for the 11 p.m. to 7 a.m. shift. Nuttall compounded his error, however, by acting excessively. He should have simply directed Arroyo to stop and, if Arroyo had refused to stop, he then should have simply written Arroyo a misbehavior report. Instead, he took the matter into his own hands by shoving Arroyo and disrupting his prayer.

## DISCUSSION and CONCLUSIONS OF LAW

Four issues are presented: (a) whether Arroyo's First Amendment rights were violated; (b) whether Nuttall is protected by the doctrine of qualified immunity; (c) whether Arroyo is entitled to compensatory damages and, if so, how much; and (d) whether Arroyo is entitled to punitive damages and, if so, how much.

### A. The First Amendment

■ It is well settled that "great deference" must be afforded to prison officials who are charged with the "difficult responsibility" of maintaining order in prisons. *Young v. Coughlin*, 866 F.2d 567, 570 (2d Cir.1989); *accord O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987). At the same time, however, "[a] prisoner's first amendment right to the free exercise of his religious beliefs may only be infringed to the extent that such infringement is ' "reasonably related to legitimate penological interests." ' " *Young*, 866 F.2d at 570 (quoting *O'Lone*, 482 U.S. at 349, 107 S.Ct. 2400 (quoting *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987))).

■ Here, Nuttall violated Arroyo's First Amendment rights by shoving him and disrupting his prayer. Nuttall acted without justification or provocation, and his actions were not reasonably related to any legitimate penological objectives. Accordingly, Nuttall is liable to Arroyo for violating his constitutional right to the free exercise of his religion.

### B. Qualified Immunity

■ Nor is Nuttall shielded from liability by the doctrine of qualified immunity. A government official is entitled to qualified immunity when the official's conduct does not

---

1. At trial, Nuttall did not deny approaching Arroyo as Arroyo was praying during quiet time. Nuttall did testify, however, that he could hear Arroyo "mumbling," that he ordered Arroyo to quit, that Arroyo did quit at first, but that Arroyo then resumed his prayer, and that he then had to order Arroyo to quit two more times. Nuttall also testified that he did not push Arroyo or touch him at all during the incident. All of this testimony is rejected.

violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *LaBounty v. Coughlin,* 137 F.3d 68, 73 (2d Cir.1998). Where an official violates a clearly established right, the defendant must prove that a reasonable person in the defendant's position would not have understood that such conduct was prohibited. *LaBounty,* 137 F.3d at 73 (quoting *In re State Police Litig.,* 88 F.3d 111, 123 (2d Cir.1996)).

■ A reasonable corrections officer in Nuttall's position on July 3, 1994 would have known that he could not shove an inmate and disrupt his prayer when the inmate was praying quietly during quiet time without disturbing others. Nuttall's actions were not objectively reasonable and he therefore is not entitled to the protection of qualified immunity.

## C. *Compensatory Damages*

■■ Arroyo is entitled to an award of compensatory damages. Fair and reasonable compensatory damages are appropriate in a section 1983 action where a plaintiff's injury was caused by the violation of a constitutional right. *Carey v. Piphus,* 435 U.S. 247, 254, 258, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978); *Atkins v. Tudor,* 143 F.3d 100, 103 (2d Cir.1998); *Mathie v. Fries,* 121 F.3d 808, 813 (2d Cir.1997). Arroyo suffered compensable emotional distress, for he was shoved without provocation or justification and his prayer was disrupted. On the other hand, he was not physically injured and his emotional anguish was minimal. Accordingly, I find that the sum of $2,000 constitutes fair and reasonable compensation for his injuries.

## D. *Punitive Damages*

■ Punitive damages may be awarded in a section 1983 action when the defendant's conduct is motivated by evil motive or intent, or when the defendant's conduct involves reckless or callous indifference to the plaintiff's federally protected rights. *Smith v. Wade,* 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983); *Mathie v. Fries,* 121 F.3d 808, 816 (2d Cir.1997). Further, puni-

tive damages are appropriate when the defendant's actions call for "deterrence and punishment over and above that provided by compensatory awards." *Wade,* 461 U.S. at 54, 103 S.Ct. 1625.

■ Here, Nuttall acted at least recklessly and with callous indifference to plaintiff's constitutional rights. He was embroiled in a "run[ning] battle" with Muslim inmates, some of whom he believed to be troublemakers. He was simply wrong about the ability of inmates to pray quietly during quiet time. He went too far, however, when he took the matter out on Arroyo by shoving him. Nuttall's conduct calls for deterrence and punishment over and above the $2,000 I have awarded in compensatory damages. Accordingly, I will award Arroyo punitive damages in the amount of $5,000.

## *CONCLUSION*

For the reasons set forth above, judgment will be entered in favor of plaintiff Generoso Arroyo Lopez against defendant Christopher Nuttall in the amount of $2,000 in compensatory damages and $5,000 in punitive damages. The Clerk of the Court shall enter judgment accordingly.

Plaintiff's counsel had previously indicated a desire to move for attorneys' fees if plaintiff prevailed. If plaintiff wishes to make a motion for attorneys' fees now, he shall do so in accordance with Fed.R.Civ.P. 54(d)(2) within 14 days hereof. If defendants wish to oppose the application, they must submit opposition papers within ten days thereafter.

SO ORDERED.