**In re TEXACO INC. SHAREHOLDER DERIVATIVE LITIGATION.**

No. 96 Civ. 8343 (CLB).

United States District Court, S.D. New York.

Dec. 1, 2000.

William C. Rand, New York City, pro se.

U. Seth Ottensoser, Milberg Weiss Bershad Hynes & Lerach LLP, New York City, for Shareholder plaintiffs.

Seth Goodchild, Weil, Gotshal & Manges LLP, New York City, for defendant Officers & Directors of Texaco.

Glendora, White Plains, NY, shareholder pro se.

## MEMORANDUM & ORDER

BRIEANT, District Judge.

By motion filed on October 30, 2000, heard and fully submitted on December 1, 2000, which motion was not invited by this Court or the Court of Appeals, Objector William C. Rand, who has appeared *pro se* in this Court and in the Court of Appeals, but happens to be an attorney, moves for an award of attorney's fees and expenses incurred in the course of his *pro se* Objection in both Courts to the fee application of counsel for Plaintiffs in this shareholder derivative litigation involving Texaco, Inc. ("Texaco").

By letter submitted November 30, 2000, counsel for Elizabeth McLaughlin, who also objected to the fee application of counsel for Plaintiffs, supports the proposed fee award. Glendora, appearing *pro se*, also having objected in the district court to the fee application of counsel for Plaintiffs, objected to any fee award to Mr. Rand, as did the Plaintiffs. Texaco has not opposed the application.

Familiarity of the reader with all prior proceedings is assumed, but some background must be stated to place this application in context. *See In re Texaco, Inc. Shareholder Litigation*, 20 F.Supp.2d 577 (S.D.N.Y.1998), reversed *sub nom Kaplan v. Rand*, 192 F.3d 60 (2d Cir.1999). *See also Roberts v. Texaco, Inc.*, 979 F.Supp. 185 (S.D.N.Y.1997), hereinafter the "*Roberts* litigation." In March 1994, the *Roberts* litigation was commenced against Tex-

aco as a class action in behalf of salaried African–American employees of the company, who claimed that Texaco had engaged in conduct which had a disparate impact upon their rights in promotions, compensation, training and job assignments, and the terms and conditions of their employment. The case was based initially on statistical analysis supported by anecdotes. On two occasions the Equal Opportunity Employment Commission ("EEOC") declined to investigate the matter or appear in the case, but issued a Right to Sue letter and an amended Right to Sue letter.

While the *Roberts* litigation was in pretrial discovery, a disgruntled Texaco employee, Richard A. Lundwall, made a clandestine audio tape of himself and other Texaco management employees discussing possible obstruction of Justice in connection with pretrial discovery. These recorded conversations evidenced an attitude of racial bias and disrespect on the part of the participants toward the plaintiff class in *Roberts*. Two of the participants were tried before a jury in this Court and acquitted on June 8, 1998, on federal charges of Obstruction of Justice.

The audio tape, which was of poor quality, was delivered to counsel for the *Roberts* class and thereafter made public. This was an immediate public relations disaster for Texaco.[1] Publication of the tape resulted in intervention in the matter by the EEOC, which had twice before declined to take action in support of the claims of the *Roberts* class.

As a direct result of the disclosure of the audio tape, *Texaco* and the *Roberts* plaintiffs entered into a settlement agreement very favorable for the class in which a common fund of $115 million was created to pay the monetary claims of all individual class members and the costs of the suit. Also, the class members received an

1. The initial publicized version of the tape contained a significant racial slur not found

in a remastered tape. *See Roberts, supra* at p. 190.

11.34% pay increase and structural arrangements were made for improvement of the personnel practices of the company, including establishment of a five-year Task Force on Equality and Fairness.

These derivative cases followed almost immediately upon the announcement of *Roberts* settlement. These actions were brought in good faith against present and past directors of Texaco and former employees, including Mr. Lundwall.

After the derivative action had been pending for some time the Defendants moved to dismiss on the ground that the claims were barred by an exculpatory provision in Texaco's certificate of incorporation permitted by the laws of Delaware, and because of a failure to make a pre-litigation demand upon the Board of Directors or plead adequate facts demonstrating that such a demand would be futile. It soon became clear that those Defendants who were financially responsible and protected by directors' and officers' insurance had not themselves done anything wrong, and that those who had engaged in wrongdoing had no money and were not covered by insurance. The derivative cases were settled without payment under an agreement to adopt certain corporate policies in the future and with the understanding that a legal fee would be fixed by the Court, not in excess of $1.4 million, to be paid solely by Texaco's insurance carrier. This was the settlement which was held to be of no value as a result of the *pro se* appeal initiated by Mr. Rand in *Kaplan v. Rand, supra*, which reversed the award of legal fees of $1 Million and disbursements to the attorneys for the derivative action Plaintiffs.

Three days after Mr. Rand appealed, Glendora also filed a *pro se* appeal. A panel of our Court of Appeals denied leave to file and dismissed Glendora's appeal.[2] The Court of Appeals in *Kaplan v. Rand, supra*, held:

2. For reasons not relevant to this litigation, Glendora was at that time under a leave to

The application [of Glendora] was denied on the ground that the movant was a layperson and not entitled to appear *pro se* to pursue a stockholders' derivative suit. *See Pridgen v. Andresen*, 113 F.3d 391, 393 (2d Cir.1997). As an alternative reason for denial of the motion, the motions panel noted that only parties may appeal from an order or judgment citing, *Marino* and *Felzen*. We may disregard the alternative reason because it is dictum, because such an order is without precedential authority, and because we are entitled to revisit the decision of a motions panel.

As noted earlier the Court of Appeals in its extensive opinion in *Kaplan* was silent with respect to authorizing the award of any legal fees to Mr. Rand for his services, either in the District Court or in the Court of Appeals. The mandate of the Court of Appeals in *Kaplan* was filed in the District Court on November 16, 1999. On the same date, a Bill of Costs was taxed by William C. Rand against Plaintiffs in the amount of $1,630.00, which has been paid. This Court complied with the mandate of the Court of Appeals, and filed an Amended Judgment on November 17, 1999 (Doc. 106), which denied the award of attorney's fees and expenses allowed by the original Judgment entered on October 16, 1998 and was silent as to fees for Mr. Rand. It was not until October 30, 2000, almost one year later, that this motion for attorney's fees and expenses against Texaco, Inc. or its insurer was filed by Mr. Rand.

■ This application is clearly time barred by Rule 54(d)(2)(B) of the Federal Rules of Civil Procedure which provides in relevant part that, "Unless otherwise provided by statute or order of the Court, the motion [for attorney's fees] must be filed and served no later than 14 days after entry of judgment...." *Weyant v. Okst*, 198 F.3d 311, 314 (2d Cir.1999); *Arroyo*

file order in the Court of Appeals.

*Lopez v. Nuttall,* 25 F.Supp.2d 407, 410 (S.D.N.Y.1998) (Chin, J.); *Straight v. Bermuda Star Line, Inc.,* 1996 WL 312112 (S.D.N.Y.) (Griesa, J.). It is only a final judgment that starts the 14 day filing period. *Weyant,* 198 F.3d at 314.

The issue of timeliness was raised by this Court at the hearing on this application. Mr. Rand argued that rule 54(d)(2)(B) applied only to statutory fee shifting cases, and that his application was equitable in nature. Nothing in the explicit provisions of Rule 54 supports this claimed distinction, and there is respected authority to the contrary. *See* 10 Moore's Federal Practice (3d Ed.) § 54.150 ("Under Rule 54(d)(2), the proper method for seeking attorneys' fees, whether the basis for the fee is statutory or equitable, is the filing of a timely motion.").

Mr. Rand failed to move for an award of attorney's fees within the time required law. Accordingly, for that reason, his motion should be denied.

It seems commonplace today for district judges to ignore the Federal Rules of Civil Procedure whenever they get in the way. Assuming without deciding that the failure of movant to seek his fees when he taxed his bill of costs, within the time strictures allowed by Rule 54(d)(2)(B) can be waived retrospectively, this Court would not award any fee to Mr. Rand on the present record, for the reasons stated below.

■■■ The right to proceed *pro se* in civil actions is guaranteed by 28 U.S.C. § 1654. It is well-established, however, that this right to proceed *pro se* does not encompass the right to proceed *pro se* on behalf of the interests of another. *Pridgen v. Andresen,* 113 F.3d 391, 393 (2d Cir.1997); *Cheung v. Youth Orchestra Found. of Buffalo, Inc.,* 906 F.2d 59, 61 (2d Cir.1990); *Jones v. Niagara Frontier Transp. Authority,* 722 F.2d 20, 22 (2d Cir.1983); *Phillips v. Tobin,* 548 F.2d 408,

411–12 (2d Cir.1976). In fact, such a position is self-contradictory because "appearance *pro se* denotes appearance for one's self." *Pridgen,* 113 F.3d at 393.

In this case, Mr. Rand's legal services for which he seeks to be reimbursed were rendered in the context of his *pro se* Objection to Texaco paying any part of Plaintiffs' legal fees and expenses incurred during the derivative suit. As Mr. Rand states in his declaration dated October 29, 2000 ("Rand Declaration"), "The grounds for the Objection were that the settlement did not constitute a substantial benefit to Texaco shareholders." Rand Declaration at ¶ 8. Because his representation during this stage of the derivative suit entailed interests other than those of Mr. Rand alone, i.e., the interests of the other Texaco shareholders, the action is not validly undertaken by Mr. Rand *pro se* to the extent he seeks to enforce the rights of others. Consequently, he is not entitled to receive attorney's fees for that representation.

There is authority in many types of cases for the position that a *pro se* litigant who is also an attorney should not be awarded attorney's fees.[3] *See, e.g., Kay v. Ehrler,* 499 U.S. 432, 111 S.Ct. 1435, 113 L.Ed.2d 486 (1991) (denying an award of attorney's fees for a prevailing attorney *pro se* litigant seeking fees under 42 U.S.C. § 1988, the fee-shifting provision applicable to § 1983 claims); *Hawkins v. 1115 Legal Service Care,* 163 F.3d 684, 694 (2d Cir.1998) (holding that a *pro se* attorney plaintiff is not permitted to recover attorney's fees in a Title VII or a § 1981 action); *S.E.C. v. Price Waterhouse,* 41 F.3d 805, 808 (2d Cir.1994) (holding that a *pro se* attorney may not be granted fees under the Equal Access to Justice Act); *Belmont v. Associates National Bank (Delaware),* 119 F.Supp.2d 149, 166 (E.D.N.Y.) (Trager, J.) (denying fees to an *pro se* attorney who brought claim under the

---

**3.** The Supreme Court is in agreement with the circuits that a *pro se* litigant who is not a lawyer is not entitled to attorney's fees. *Kay*

*v. Ehrler,* 499 U.S. 432, 435, 111 S.Ct. 1435, 113 L.Ed.2d 486 (1991)..

Truth in Lending Act because "Supreme Court and appeals court precedents on similar fee-shifting provisions of other federal remedial statutes compels this result"); *Ezra v. BWIA Int'l Airways, Ltd.*, 2000 WL 1364354 (E.D.N.Y.) (Gleeson, J.) (declining to award attorney's fees to an "experienced" attorney acting *pro se* under 28 U.S.C. § 1447(c) to remand his case to state court); *BD ex rel. Doe v. DeBuono*, 193 F.R.D. 117, 138 (S.D.N.Y.2000) (McMahon, J.) (*pro se* attorney litigant is not entitled to apply for attorney's fees to reimburse him for pursuing his § 1983 claim at his administrative and Article 78 proceedings in a case alleging violation of the Individuals with Disabilities in Education Act).

In cases in which an attorney acting *pro se* was denied attorney's fees, the courts have rested their decisions on a variety of policy considerations, which this Court finds persuasive here. The statutes enabling fee-shifting are intended to permit aggrieved persons with meritorious claims to secure counsel where they might otherwise not have readily available access to professional legal representation. *See, e.g., Kay*, 499 U.S. at 437, 111 S.Ct. 1435. To harness the considerable power of this worthy statutory provision intended to insure legal representation of persons with meritorious claims for the benefit of persons representing themselves, who happen to be attorneys, does not capture the spirit of the statute.

Within the logic of *Kay* and its progeny, Mr. Rand did not appear in this case as independent, objective counsel. For that reason alone, payment of attorney's fees in a *pro se* situation ought to be discouraged: "[e]ven a skilled lawyer who represents himself is at a tactical disadvantage in litigation [because] ... he is denied the judgment of an independent third party in framing the legal theory of the case, evaluating methods of presenting evidence ... and so on." *DeBuono*, 193 F.R.D. 117 at 138. If Mr. Rand were permitted to recover fees in this case, a plaintiff who happened also to be a lawyer would be deterred from retaining competent, objective counsel, by the knowledge that he could enrich himself by recovering attorney's fees if he prevails. "The statutory policy of furthering the successful prosecution of meritorious claims is better served by a rule that creates an incentive to retain counsel in every such case." *Id.* at 473, 438, 111 S.Ct. 1435; *BD*, 193 F.R.D. at 138 (S.D.N.Y.2000) (McMahon, J.).[4]

Furthermore, creation of a common fund, or financial benefit, which is the usual basis for fee awards in similar litigation is absent here. Texaco itself was not obligated to pay Plaintiffs' counsel any legal fees and expenses. Rather, Texaco's directors' and officers' liability insurance carrier had agreed to pay the legal fees, and payment thereof did not increase the future premium paid by Texaco for such insurance. Without some sort of settlement the Plaintiffs in the derivative cases, who sued as fiduciaries, could not have dismissed the cases without leave of the Court and notice to shareholders, any one of whom could seek to take charge of the cases. *See* Rule 23.1, F.R.Civ.P. Neither Texaco nor its insurer had any pressing desire to litigate the validity or applicability under Delaware Law of the directors' and officers' exculpatory provision, nor the need for a pre-litigation demand on the

---

4. Reviewing the cases cited by Mr. Rand in support of his application, the Court notes that the majority of them are not within this circuit, and those decided by other district judges of the this district, although they may be persuasive, have no binding authority. See *Gasperini v. Center for Humanities, Inc.* 518 U.S. 415, 430, n. 10, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996). Mr. Rand cites *In re Resorts Intern. Shareholder Litigation*, 1990 WL 154154 at 9 (Del.Ch. Oct.11, 1990) as "awarding fees to *pro se* stockholder-objector." The only *pro se* litigant mentioned there is Mr. Lowenschuss. The decision states that Mr. Lowenschuss claimed, among other assertions, that he "as a pro se litigant is somehow entitled to reimbursement of attorney fees and expenses. None of these claims have merit."

Board. It is likely that the fees and expenses associated with such litigation would have exceeded the amount of the fee awarded in the settlement. Shareholder suits do serve a public purpose, as do class actions. While the Court recognizes the right of Mr. Rand to hold a dim view of such cases and the lawyers who bring them, litigation of the quixotic notions of a 200 share owner with an attitude, is a luxury for which others should not be required to pay.[5]

Lastly, the amount claimed is excessive, based as it is upon the hourly billing rate which the prestigious full service law firm by which Mr. Rand is currently employed uses in billing clients for his services. That law firm has staffing costs and overhead not applicable to a single practitioner and brings supervision, judgment, institutional responsibility and a team approach to litigation, all of which increase the value and cost of its services. The lodestar used by his employer, stated to be $360/hour, should not be applicable to services which were not rendered by the employer, and for which it takes no responsibility. Mr. Rand explains that he did not retain his firm as attorney of record because that office "does not accept contingent fee matters." No reason appears to treat the services as if they had been rendered by the law firm. They were not.

No reasons are found in this case to relieve the applicant from the time bar imposed by Rule 54(d)(2)(B) F.R.Civ.P.. The application is denied in all respects as time barred and lacking in merit.

SO ORDERED.

---

**5.** In his brief to the Court of Appeals dated December 1, 1998, at pages 18–19, Mr. Rand argued for reversal of this case to discourage strike suits.