**Daniel KURZ, Plaintiff,**

v.

**CHASE MANHATTAN BANK USA, NA, Defendant.**

**No. 00 CIV. 1573(CM).**

United States District Court, S.D. New York.

June 25, 2004.

Daniel L. Kurz, Zev Goldstein, Monsey, NY, for Plaintiffs.

Debra Lynne Wabnik, Thomas Edward Stagg, Simmons, Jannace & Stagg, L.L.P., East Meadow, NY, for Defendant and Counter Claimant.

## DECISION AND ORDER ON CROSS MOTIONS FOR ATTORNEYS' FEES AND SANCTIONS

MCMAHON, District Judge.

Before the Court are cross motions (1) by plaintiff, pursuant to Fed.R.Civ.P. 54(d), for attorney's fees substantially in excess of the $50 awarded by the Court immediately following the trial of this action; and (2) by defendant, for sanctions against plaintiff for making the instant motion.

**The Motion for Attorneys' Fees**

Daniel Kurz, the plaintiff in what remains of this action, is a lawyer. He spends a great deal of time trying to catch persons to whom he legitimately owes

money in hyper-technical violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1666—a statute that is, in the experience of this Court, abused at least as often as it is legitimately invoked. In his third cause of action—maintained solely on his own behalf—Kurz accused defendant Chase of sixty-six TILA violations in connection with charges he admittedly incurred on his Chase credit card. Kurz knew full well that he had incurred these charges; he admitted as much. But he took advantage of the intricacies of TILA to question charges that he unquestionably knew he had incurred, and in some instances to avoid or defer paying those charges. Indeed, this Court specifically and categorically found that Kurz asserted the TILA claims, "to harass Chase, to be a pain in the neck, and to avoid paying legitimate purchases and finance charges for as long as possible." (Wabnik Aff. Ex. D at 8).[1]

Kurz, who specializes in TILA matters,[2] represented himself (and other plaintiffs, whose claims were dismissed by decision dated February 16, 2001) throughout these proceedings, until the day of the bench trial, which was held July 14–21, 2003.[3] Although both Zev Goldstein and Nachman Yaakov Ziskind, who have filed fee applications, signed pleadings in this case, it is apparent, both from our prior dealings and the fee applications themselves, that Kurz carried the case forward on his own.

In April 2003, in a decision denying defendant's motion for summary judgment, this Court reminded Kurz that an attorney representing himself is not entitled to reimbursement for "attorneys' fees." [4] *citing Belmont v. Associates National Bank (Del.)*, 119 F.Supp.2d 149, 166 (E.D.N.Y. 2000); *see also In re Texaco Inc. Shareholder Derivative Litigation*, 123 F.Supp.2d 169, 172 (S.D.N.Y.2000) (collecting cases); *In re Westinghouse Securities Litigation*, 219 F.Supp.2d 657, 662 (W.D.Pa. Aug.16, 2002)(collecting cases). Thus, Kurz took care to arrive in court with Zev Goldstein for the trial, which took place over four days during July. Mr. Goldstein accompanied plaintiff to Court and questioned witnesses. The Court observed the entire trial and readily concluded that Kurz was carrying the laboring oar. Indeed, on multiple occasions, Goldstein—who is a very nice man—clearly did not know what he was doing and had to be rescued by Kurz from some dilemma or other. It was apparent to me, sitting as the trier of fact, who was calling the shots. And it was not Goldstein.

At the conclusion of the trial, I awarded Kurz a total of $159.05. Of his 66 claims, only the claims relating to charges made at

---

1. Indeed, so outrageous was Kurz's invocation of a statute designed to help consumers who had LEGITIMATE questions about whether they had incurred a particular charge that this Court is considering whether to send the transcript of these proceedings to Members of Congress, so they can think about whether this sort of abuse—which must cost the banking industry millions of dollars, and unquestionably diverts the resources of the federal judiciary from the sort of business Congress established it to dispose of—should be legislatively curbed, perhaps by adding a requirement that a TILA plaintiff harbor a good faith belief that he did not in fact incur the charge in question.

2. Kurz has brought a number of baseless TILA claims on behalf of clients. His claims for fees have been drastically reduced in those cases, and sometimes disallowed entirely. *See. e.g., Selevan v. Capital One Bank*, 164 F.3d 619, 1998 WL 681270 (2d Cir.1998); *Kramer v. Marine Midland Bank*, 577 F.Supp. 999 (S.D.N.Y.1984); *Bryson v. Bank of N.Y.*, 1987 WL 5362 (S.D.N.Y. Jan.8, 1987).

3. Neither side timely requested a jury trial.

4. Although Zev Goldstein signed the summary judgment submissions, Kurz's was named "Of Counsel" on the Memoranda.

Wesley Kosher—which charged Kurz three times for the same merchandise—were founded on the sort of legitimate inquiry Congress had in mind when it passed TILA. In some instances Kurz proved a statutory violation but did not establish any right to damages, either statutory or actual, or to forfeiture. In a small number of instances he established a right to forfeiture or to damages. In a decision placed on the record, I recorded the conclusions set forth above—namely, that Kurz and commenced and maintained his claims "to harass Chase, to be a pain in the neck, and to avoid paying legitimate purchased and finance charges for as long as possible."

Also at the conclusion of the trial, I awarded Goldstein attorneys' fees in the amount of $50.

■ Judgment was entered on December 23, 2003. No motion to alter or amend the judgment was made within ten days, as required by Fed.R.Civ.P. 59(e). This Court has no power to waive that deadline. *See* Fed.R.Civ.P. 6(b).

Fourteen days after the judgment was entered, Kurz and Goldstein, together with a third attorney, Nachman Yaakov Ziskind (whose participation in this case, if any, was completely unknown to the Court prior to the filing of this motion), moved pursuant to Fed.R.Civ.P. 54(d) for an award of attorneys' fees. Rule 54(d) authorizes such a motion within 14 days of the entry of judgment. The rule does not specify whether it trumps Rule 59 in the event that the judgment already contained an award of attorneys' fees.

Kurz now seeks $168,039.37 in attorneys' fees for representing himself.

Goldstein seeks $26,917.78 in attorneys' fees.

Ziskind seeks $3,383.33 in attorneys' fees.

Each application is accompanied by a supporting affirmation.

Chase responded to the motion by invoking *res judicata* and by filing a cross motion for sanctions in the amount of the fees and costs it incurred in responding to the motion. Chase made no mention of either Rule 54 or Rule 59 in its responsive papers, though I was hoping it would do so.

Kurz took an appeal from the judgment that was entered on December 23, 2003. However, he failed to properly perfect his appeal to the Second Circuit. Thus demonstrating that what was really driving this action was attorneys' fees and not the merits. The appeal was dismissed on default, and the Clerk for the Second Circuit closed the case on June 16, 2004. The December 23 judgment is thus quite final.

*The Motion for Counsel Fees Is Denied as Untimely*

■ The first order of business is to decide whether the motion for counsel fees is timely or not. I conclude that, in the circumstances of this case, it is not.

The applicable rules of civil procedure are cited above. In this case, notwithstanding that no Rule 54(d) motion had been made, the Court awarded attorneys' fees in the judgment. The proper course for plaintiff was to move to alter or amend the judgment. A plaintiff has only ten days from the entry of judgment to make such a motion, and a district court is powerless to waive that deadline. Failure to make such a motion renders the matter res judicata. The appeal having been dismissed only underscores this conclusion.

Therefore, the motion for counsel fees must be denied.

*If the Motion is Timely Under Rule 54(d), It is Denied on the Merits*

If I am wrong, and plaintiff followed the proper course in bringing on his motion for

counsel fees pursuant to Rule 54(d), there is no reason for me to dally in deciding it.

■ *Kurz:* Kurz's application for counsel fees is denied, for the reasons set forth above.

■ *Goldstein:* Goldstein's application for counsel fees includes time alleged spent on this lawsuit beginning in July 2001. If Goldstein was in fact working on this case as long ago as two years before the trial, it was as a "silent partner." He never appeared for a conference, and although he signed certain pleadings and memoranda, Kurz was usually named "Of Counsel."

In light of his lack of visible participation in this action prior to the trial, Goldstein's request for fees is astonishing. He claims to have spent 9103 minutes—over 156 hours—on the matter. Since from the plaintiff's perspective this was a one witness case—and the witness was Kurz—and since Chase offered only one witness as well, the number of hours expended is per se unreasonable.

Goldstein does not submit contemporaneous time records, but a summary of time spent in a single document that was obviously prepared for this litigation (Ex. A to his declaration). No original time records are proffered to the Court.

The entries on Exhibit A are, to put it charitably, cursory in content and not helpful to the Court in determining whether the tasks performed were an appropriate exercise of an attorney's time—for example "Legal Research (LOIS Law)." The subject of the research is not disclosed. For all I know it could relate to some issue on which Kurz did not prevail. Or it could be duplicative of research performed by Kurz. I simply cannot tell.

Many entries confirm my prior conclusion that Kurz was doing the work on this matter—all of the drafting of important papers, for example, such as memos of law and Rule 56.1 statements, appears to have been done by Kurz, since Goldstein only indicates that he "reviewed" these documents. Kurz's fee request, which seeks reimbursement for his having drafted these pleadings and papers, confirms my intuition. Since Kurz is the one with extensive experience in TILA litigation, Goldstein's work in this regard appears to be unnecessarily duplicative and, thus, not reimbursable.

Some entries are obviously not compensable. For example, Goldstein asks me to award him $175/hour (ostensibly his "going rate") for spending 460 minutes (over 7 hours) "collate[ing] copies of Exhibits sets"—a job that could have been performed in far less time and at a fraction of the cost by a clerical employee or Kinko's.

The vast majority of Kurz's claims were found to be meritless. Goldstein is of course not entitled to fees for work on claims for which his client recovered nothing. *See Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996 (2d Cir.1995), *Harbor Software, Inc. v. Applied Systems, Inc.*, 92 Civ. 8097, 1997 WL 187350 at *1 (S.D.N.Y. April 15, 1997). Unfortunately, Goldstein's "time records" contain so little detail that they do not allow me to apportion the time he worked between claims on which plaintiff prevailed and claims on which he did not. For example, he claims to have written letters to Mr. Stagg and Ms. Wabnik (Chase's counsel), but he never says what the letters were about. I am hard-pressed to see how I could award him fees on such a showing.

■ Last, but hardly least, there remains my finding that Kurz brought this lawsuit in bad faith, and solely for the purpose of harassing Chase. Evaluation of what constitutes reasonable counsel fees is a matter within the sound discretion of

the trial court. *See de Jesus v. Banco Popular de Puerto Rico*, 918 F.2d 232 (1st Cir.1990); *Herrera v. First Northern Sav. and Loan Ass'n*, 805 F.2d 896, 902,(10th Cir.1986); *Crawford v. Andrew Systems, Inc.*, 39 F.3d 1151, 1153 (11th Cir.1994); *McGowan v. King, Inc.*, 616 F.2d 745 (5th Cir.1980). In deciding what constitutes a reasonable fee, courts consider several factors, including the time, labor and skill required, the novelty and difficulty of the questions, and the amount involved and the results obtained. *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 1937–38, 76 L.Ed.2d 40 (1983). Although courts should deny a fee only in the most unusual circumstances, the presence of bad faith conduct on the part of the prevailing plaintiff "surely" constitutes an unusual circumstance justifying a denial of an attorney's fee. *Graziano v. Harrison*, 950 F.2d 107, 114 (3d Cir.1991) *citing de Jesus*, 918 F.2d at 234 n. 4. Although the Second Circuit has not addressed the issue, I believe that Kurz's bad faith would have justified a denial of fees in toto. Nonetheless I granted Goldstein a nominal award.

Only a nominal award, if any, was justified in this case in light of plaintiff's limited success on his claims and the difficulty of determining the amount of truly unnecessary work Goldstein performed on the successful claims (*see Carroll v. Wolpoff & Abramson*, 53 F.3d 626 (4th Cir.1995) *quoting Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)), coupled with my firm belief that Mr. Goldstein was counsel in name only. Thus, were his motion timely, I would decline to amend my original fee award.

I decline to award any fee to Goldstein for work on a fee application that is so patently inadequate.

■ *Ziskind:* I have also received an affirmation from someone named Nachman Yaakov Ziskind, who claims to have worked on this matter and seeks $3,383.33 for that work. There is no indication that he is professionally associated with either Kurz or Goldstein. His speciality is tax and ERISA—areas of law that are irrelevant to the instant action. Although I do not recall Mr. Ziskind's ever appearing in this court, he—along with Kurz—signed the Amended Complaint dated April 23, 2001 and he appears to have had some interaction with Chase, who served disclosure on him.

There is no legitimate justification for using three attorneys to prepare this matter. His work, whatever it was, could only have been duplicative. Ziskind claims to have spent 13.5 hours, but provides only cursory and uninformative descriptions of what he did. "Telephone conversation with D. Kurz" (topic(s) unspecified) is the principal entry on his diary, which hardly enables me to figure out what he did, let alone why it was necessary that he do it.

After presiding over this case for several years, I have no difficulty concluding that there was no need to have three attorneys working on the matter. Submission of the Ziskind fee application simply confirms my belief—formed long ago—that Kurz's avowed purpose in maintaining this action (in which he knew that he had legitimately incurred all except two duplicate charges) was to obtain a substantial judgment for attorneys' fees, and he piled attorneys onto the case, without the Court's knowledge, in order to obtain a larger award of attorneys' fees.

The Ziskind fee application is disallowed in its entirety.

**Chase's Cross–Motion For Sanctions is Granted in Part and Denied in Part**

■ Chase has cross-moved for sanctions under Rule 11 and 28 U.S.C. § 1927. Its motion is granted to the ex-

tent directed to Kurz, and otherwise is denied.

It is appropriate to sanction Kurz under Rule 11 for bringing a fee application on his own behalf. Kurz himself admits that he "might not" be entitled to counsel fees for representing himself. In fact, the law is quite clear that he is not—any more than a lawyer who brings a Section 1983 action or a Title VII action on his own behalf is entitled to an award of attorneys' fees. *Kay v. Ehrler,* 499 U.S. 432, 111 S.Ct. 1435, 113 L.Ed.2d 486 (1991); *Hawkins v. 1115 Legal Serv. Care,* 163 F.3d 684, 694 (2d Cir.1998). He has wasted Chase's money and the Court's time by persisting in his application after I indicated, not once but twice, that he would receive no fee award. He could have taken his quarrel with my ruling to the Second Circuit, but defaulted on his appeal. Moreover, Kurz had no good faith basis to seek to overturn my rulings prior to and at trial on the subject of his entitlement to a fee award—no good faith basis under existing law, and no good faith argument for an extension of the law to permit an award to him in this case.

Although Kurz was for much of this lawsuit (really, throughout this lawsuit) a *pro se* plaintiff, he is a lawyer as well, and Rule 11 applies unambiguously to his conduct.

■ Moreover, I have expressly found that Kurz brought all his claims—whether he recovered on them or not—for the sole and exclusive purpose of harassing Chase. He has abused a statute that was passed by Congress for a purpose very different than the one for which Kurz invoked it—to earn fees for himself. Bad faith on the part of a litigant can be evidenced, not only by bringing meritless claims, but by asserting meritorious claims for the purpose of harassing the opponent. *East Cascade Women's Group P.C. v. Tutthill,* 216

F.Supp.2d 1159 (D.Or.2002). In this case, Kurz did both. He is therefore amenable to sanctions under 28 U.S.C. § 1927.

After reviewing the papers on the motion for attorneys' fees, I find that approximately 60% of the work submitted by Chase in opposition to the motion for an award of fees was directed to Kurz's application. Accordingly, Kurz is directed to pay 60% of the attorneys' fees Chase incurred in opposing this motion. Chase is directed to submit an affidavit detailing its fees within 10 days, and I will enter judgment for 60% of that amount.

I deny the motion for sanctions addressed to Goldstein and Ziskind.

This constitutes the decision and order of the court.